1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

Counsel for Plaintiff and the Proposed Class

**LAW OFFICES OF RONALD A.**
**MARRON, APLC**
RONALD A. MARRON (175650)
*ron.marron@gmail.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:(619) 696-9066
Facsimile: (619) 564-6665

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

KELLEY BRUNO on Behalf of Herself and
All Others Similarly Situated,

        Plaintiff,

    v.

QUTEN RESEARCH INSTITUTE, LLC,
and TISHCON CORP.,

               Defendants.

Case No: 8:11-cv-00173 DOC (Ex)
Pleading Type: Class Action

**REPLY IN SUPPORT OF MOTION**
**FOR CLASS CERTIFICATION**

Judge: Hon. David O. Carter
Hearing Date: October 17, 2011
Time: 8:30 a.m.
Location: Courtroom 9D

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

ARGUMENT ....................................................................................................... 1

I.    PLAINTIFF HAS STANDING TO REPRESENT THE CLASS ...................... 1

    A.    Plaintiff has Personal Standing ................................................. 1

        1.    Plaintiff Relied on Defendants' Representations............................ 2

        2.    Defendants' Representations Were Material ................................. 2

    B.    Plaintiff's Claims are Typical of Qunol Gelcap Buyers' Claims ............. 3

        1.    Typicality Standard.................................................................. 4

        2.    Qunol Liquid & Gelcaps are the Same Product ............................ 5

        3.    There is no "Substantial Divergence" in the Proof Required for Claims Concerning Qunol Liquid and Gelcaps.......... 7

II.    THE CLASS HAS ARTICLE III STANDING ........................................ 8

III.    THE REQUIREMENTS OF RULE 23(a) ARE MET..................................... 11

    A.    Commonality.................................................................... 11

    B.    Typicality ........................................................................ 12

        1.    The "Up To" Language does not Defeat Typicality..................... 13

        2.    No Questions of Credibility Defeat Typicality............................ 14

        3.    Plaintiff's Knowledge of a Different Case is Irrelevant ............... 15

        4.    Plaintiff's Reasons for Buying Qunol do not Make Her Atypical......................................................................... 15

        5.    Plaintiff's Individual Experience with Qunol is Irrelevant .......... 16

        6.    Plaintiff Suffered the Identical Injury to all Class Members ....................................................................... 16

    C.    Adequacy....................................................................... 18

i

IV.   23(b)(2) CERTIFICATION IS PROPER.................................................19

    A.   Plaintiff's Request for Monetary Relief is Incidental to Injunctive Relief............................................................19

    B.   Plaintiff's Request for Injunctive Relief is not Moot..............................21

V.   23(b)(3) CERTIFICATION IS PROPER.................................................21

    A.   Predominance.................................................21

    B.   Superiority.................................................23

VI.   A NATIONWIDE CALIFORNIA LAW CLASS IS PROPER.......................24

    A.   Nationwide Application of California Law does not Violate Due Process.................................................24

    B.   Defendants did not Satisfy their California Choice-of-Law Burden.................................................24

CONCLUSION.................................................25

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Aho v. Americredit Fin. Servs.*,
2011 U.S. Dist. LEXIS 80426 (S.D. Cal. July 25, 2011)...................................4, 21

*Ameron Int'l Corp. v. Am. Home Assur. Co.*,
2011 U.S. Dist. LEXIS 61486 (C.D. Cal. June 6, 2011)........................................25

*Annunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005)................................................................10

*Arevalo v. Bank of Am. Corp.*,
2011 U.S. Dist. LEXIS 34151 (N.D. Cal. Mar. 29, 2011) .......................................3

*Bates v. United Parcel Service, Inc.*,
511 F.3d 974 (9th Cir. 2007) ...................................................................................8

*Brazil v. Dell, Inc.*,
2010 U.S. Dist. LEXIS 42877 (N.D. Cal. Mar. 29, 2010) .................................4, 18

*Buzoiu v. Risk Mgmt. Alternatives, Inc.*,
2004 U.S. Dist. LEXIS 11842 (E.D. Pa. June 14, 2004) ......................................15

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) .................................................................................14

*Charlebois v. Angels Baseball, LP*,
2011 U.S. Dist. LEXIS 71452 (C.D. Cal. June 30, 2011).....................................22

*Chavez v. Blue Sky Nat. Bev. Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) ...........................................................7, 8, 18, 23

*Committee on Children's Television, Inc. v. Gen. Foods Corp.*,
35 Cal. 3d 197 (1983) ............................................................................................20

*Day v. AT&T Corp.*,
63 Cal. App. 4th 325 (1998) ..................................................................................16

*Delarosa v. Boiron*,
  2011 U.S. Dist. LEXIS 106248 (C.D. Cal. Aug. 24, 2011) ...............................3, 20

*Ewert v. Ebay, Inc.*,
  2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sept. 30, 2010)...................................17

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .......................................................................................14

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982)......................................................................................................4

*Greenwood v. CompuCredit Corp.*,
  2010 U.S. Dist. LEXIS 127719 (N.D. Cal. Nov. 19, 2010)............................passim

*Hanlon v. Chrysler Corp.*,
  150 F.3d (9th Cir. Cal. 1998).........................................................................4, 12, 22

*Hanon v Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .................................................................................4, 13

*Harris v. Vector Mktg. Corp.*,
  753 F. supp. 2d 996, 1015 (N.D. Cal. Nov. 5, 2010) ...............................................14

*Herrera v. LCS Fin. Servs. Corp.*,
  2011 U.S. Dist. LEXIS 58288 (N.D. Cal. June 1, 2011) .........................................13

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ..............................................................................15

*Holloway v. Full Spectrum Lending*,
  2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007)........................................15

*In re Citric Acid Antitrust Litig.*,
  1996 U.S. Dist. LEXIS 16409 (N.D. Cal. 1996)........................................................5

*In re Hitachi TV Optical Block Cases*,
  2011 U.S. Dist. LEXIS 135 (S.D. Cal. Jan. 3, 2011) ...............................................7

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................................passim

iv

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
 2011 U.S. Dist. LEXIS 52529 (C.D. Cal. May 13, 2011)..................................2

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
 571 F.3d 953 (9th Cir. 2009) .........................................................................21

*Johnson v. Gen. Mills, Inc.*,
 2011 U.S. Dist. LEXIS 103357 (C.D. Cal. Sept. 12, 2011) ...................................12

*Johnson v. Gen. Mills, Inc.*,
 2011 U.S. Dist. LEXIS 45120 (C.D. Cal. Apr. 20, 2011)..................................22

*Keilholtz v. Lennox Hearth Prods.*,
 268 F.R.D. 330 (N.D. Cal. 2010) ..............................................................22, 24

*Kingsbury v. U.S. Greenfiber, LLC*,
 2011 U.S. Dist. LEXIS 710588 (C.D. Cal. May 23, 2011)...................................10

*Kwikset Corp. v. Super. Ct.*,
 51 Cal. 4th 310 (2011) ..............................................................................1, 18

*Lewis v. Casey*,
 518 U.S. 343 (1996).........................................................................................8

*Linney v. Cellular Alaska P'ship.*,
 151 F.3d 1234 (9th Cir. 1998) .......................................................................19

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992).........................................................................................8

*Martin v. Dahlberg*,
 156 F.R.D. 207 (N.D. Cal. 1994) ...................................................................24

*McKenzie v. Fed. Express Corp.*,
 2011 U.S. Dist. LEXIS 65278 (C.D. Cal. June 16, 2011)..................................1

*Menagerie Prods. v. Citysearch*,
 2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009) ....................................16

*Miletak v. Allstate Ins. Co.*,
 2010 U.S. Dist. LEXIS 26913 (N.D. Cal. Mar. 5, 2010) ...........................10, 14, 17

v

*Moeller v. Taco Bell Corp.*,
    220 F.R.D. 604 (N.D. Cal. 2004) .................................................................15

*O'Connor v. Boeing N. Am., Inc.*,
    284 F.R.D. 311 (C.D. Cal. 1998).................................................................22

*O'Shea v. Epson Am., Inc.*,
    2011 U.S. Dist. LEXIS 105504 (C.D. Cal. Sept. 19, 2011).......................9

*Occidental Land, Inc. v. Super. Ct.*,
    18 Cal. 3d 355 (1976) ..................................................................................3

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008).................................................................24

*Pecover Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*,
    2000 U.S. Dist. LEXIS 13138 (S.D.N.Y. Sept. 12, 2000) .........................25

*Pecover v. Elec. Arts, Inc.*,
    2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) ...............5, 24

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)....................................................................................24

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ......................................................................25

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ......................................................................4

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009).........................................................9

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985).................................................................17

*Shapiro v. Sutherland*,
    64 Cal. App. 4th 1534 (1998) .......................................................................3

*Simpson v. Fireman's Fund Ins. Co.*,
    231 F.R.D. 391 (N.D. Cal. 2005) ...............................................................16

vi

*State Farm v. Super. Ct.*,
    45 Cal. App. 4th 1093 (1996) ................................................................. 10

*Stearns v. Ticketmaster Corp.*,
    2011 U.S. App. LEXIS 17454 (9th Cir. Aug. 22, 2011) ..................... 9, 11

*Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145 (2010) ........................................................ 3, 10, 12

*Tsirekidze v. Syntax-Brillian Corp.*,
    2009 U.S. Dist. LEXIS 61145 (D. Ariz. July 17, 2009) ........................ 15

*Ugas v. H&R Block Enters., LLC*,
    2011 U.S. Dist. LEXIS 86769 (C.D. Cal. Aug. 4, 2011) ....................... 19

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953) ............................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .............................................................. 11, 19, 21

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................. 8

*Wash. Mut. Bank v. Super. Ct.*,
    24 Cal. 4th 906 (2001) ........................................................................... 25

*Washington v. Joe's Crab Shack*,
    271 F.R.D. 629 (N.D. Cal. Dec. 23, 2010) ........................................... 14

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ...................................................... 9, 23

*Weinstat v. Dentsply Int'l, Inc.*,
    180 Cal. App. 4th 1213 (2010) ................................................................ 3

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ......................................................... 3, 6

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ................................................................. 13

vii

*Wolph v. Acer Am. Corp.,*
 2011 U.S. Dist. LEXIS 35003 (N.D. Cal. Mar. 25, 2011) .........................11, 24, 25

*Yamada v. Nobel Biocare Holding Ag,*
 2011 U.S. Dist. LEXIS 92598 (C.D. Cal. Aug. 12, 2011) .....................................10

*Yumul v. Smart Balance, Inc.,*
 733 F. Supp. 2d 1117 (C.D. Cal. 2010)................................................................10

*Zeisel v. Diamond Foods, Inc.,*
 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) ...............................passim

## OTHER AUTHORITIES

5 MOORE'S FED. PRAC. § 23.21[a] .....................................................................22

Alba Conte & Herbert Newberg, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed.
 2002) .................................................................................................................4, 8

1   Plaintiff respectfully submits this Reply Memorandum in support of her Motion for

2   Class Certification and in response to the Oppositions of Defendants Quten and Tishcon.

3   <u>**ARGUMENT**</u>

4   **I.   PLAINTIFF HAS STANDING TO REPRESENT THE CLASS**

5   Plaintiff has standing to represent and assert California law claims on behalf of any

6   class member who purchased Qunol with misleading labeling because *she* purchased

7   Qunol in reliance on materially false or misleading label statements, losing money as a

8   result. Defendants try to narrow the class by pretending that Qunol is a different product

9   in gelcap form than in liquid, arguing that Ms. Bruno, as a liquid buyer, lacks standing to

10  represent claims of gelcap-buying class members. *See* Quten Opp. at 10-11; Tishcon Opp.

11  at 6-7. But Qunol liquid and gelcaps do not differ in any meaningful way, with both sold

12  at a premium because they are supposedly multiple times more effective than "regular

13  Q10." Accordingly, Plaintiff's claims are typical of all Qunol buyers' claims.

14  **A.   Plaintiff has Personal Standing**

15  "A plaintiff seeking to represent a class must establish personal standing."

16  *McKenzie v. Fed. Express Corp.*, 2011 U.S. Dist. LEXIS 65278, at *12 (C.D. Cal. June

17  16, 2011) (citation omitted).[1] In order to establish standing on her claims under the UCL,

18  FAL and CLRA, Plaintiff must show she "lost money or property" as a result of

19  Defendants' conduct. *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *8. These statutes impose a

20  reliance requirement on Ms. Bruno. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326

21  (2009); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321-22 (2011). "It is not necessary,"

22  however, "that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be

23  the sole or even the predominant or decisive factor in influencing [her] conduct. . . . It is

24  enough that the representation has played a substantial part, and so has been a substantial

25  factor in influencing [her] decision." *Tobacco II*, 46 Cal. 4th at 326 (quotations and

26  _____

27  [1] At the class certification stage, a Plaintiff need only establish that there is an issue of fact as to standing. *See Zeisel v. Diamond Foods, Inc.*, 2011 U.S. Dist. LEXIS 60608, at

28  *12-13 & n.6 (N.D. Cal. June 7, 2011).

1

1   citation omitted). In addition, "a presumption, or at least an inference, of reliance arises
2   whenever there is a showing that a misrepresentation was material," that is, "if a
3   reasonable man would attach importance to its existence or nonexistence in determining
4   his choice of action in the transaction in question." *Id.* at 327 (internal quotations omitted).

5               ### 1.    *Plaintiff Relied on Defendants' Representations*

6               Defendants do not challenge Ms. Bruno's allegations that she purchased Qunol in
7   actual reliance on representations that it offers multiple times better absorption and
8   efficacy. *See* Compl. ¶¶ 13, 33. Nor could they. When asked why she bought Qunol, Ms.
9   Bruno testified that factors influencing her decision included "the advertising and the
10  labeling. . . . it had six times the regular absorption, so it was touted as being more
11  efficient and effective." Bruno Dep. Tr., Dkt. No. 57-5 at 66:11-67:4; *see generally id.* at
12  64:4-67:4, 68:15-70:8.

13              ### 2.    *Defendants' Representations Were Material*

14              A showing of materiality *independently* satisfies a lead plaintiff's causation
15  requirement. *See In re Toyota Motor Corp. Unintended Acceleration Litig.*, 2011 U.S.
16  Dist. LEXIS 52529, at *125 (C.D. Cal. May 13, 2011). Here, Defendants' claim of better
17  *absorption* is manifestly a proxy for better *effectiveness*. They use "absorption" and
18  "effectiveness" interchangeably, often on the same packaging. *See* Weston Decl. Ex. B
19  (QUT239; Tishcon168). They have repeatedly and explicitly admitted the materiality of
20  their absorption claim, telling consumers, "When it comes to Coenzyme Q10, it's not just
21  what you take—it's what you *absorb* that really matters!" *Id.* (Tishcon168). Tishcon's
22  CEO Raj Chopra confirms, "[a]bsorption of CoQ10 is crucial," Chopra Decl., Dkt. No. 59
23  ¶ 2; *see also* Persinger Decl. ¶ 11, Ex. 2 at 4 (NAD report noting Defendants claim that
24  "Absorption = Effectiveness"). Accordingly, Defendants' argument that Ms. Bruno made
25  a "subjective leap" in interpreting the absorption claim as concerning Qunol's
26  effectiveness, *see* Tishcon Opp. at 18, rings hollow.

27              There can be no more material representation about a product than that it is
28  effective. *See Delarosa v. Boiron*, 2011 U.S. Dist. LEXIS 106248, at *8 (C.D. Cal. Aug.

24, 2011) (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156-58 (2010)).[2] Moreover, by showing *she* relied on Defendants' misrepresentations, Plaintiff permits the Court to draw a separate and distinct inference of materiality. *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("[T]he purchases made by plaintiffs were acts consistent with their reliance on Dannon's alleged misrepresentations regarding the health benefits of the Products. Thus, the Court finds that the evidence presently before the Court allows for an inference of reliance in this case," quoting *Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355 (1976)); *accord Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010). Thus, Plaintiff has shown materiality and is entitled to a presumption of reliance for purposes of standing. *See* Mot. at 18-19.[3]

## B.   Plaintiff's Claims are Typical of Qunol Gelcap Buyers' Claims

Notwithstanding Plaintiff's showing of reliance and materiality, Defendants argue that because Ms. Bruno bought liquid Qunol, she lacks standing to represent Qunol gelcap buyers. But so long as a plaintiff establishes personal standing, she may represent a class whose claims are typical of her claims. *See Arevalo v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 34151, at *12-13 (N.D. Cal. Mar. 29, 2011) ("[W]hen class representatives establish standing . . . , the requirements of Rule 23(a) are ordinarily the best means of

---

[2] Defendants assert without authority that a presumption of reliance may *only* arise where, as in *Delarosa*, "the claim at issue is that the product does the one thing it is supposed to do," *see* Quten Opp. at 22. To the contrary, a misrepresentation "is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction . . . ." *Tobacco II*, 46 Cal. 4th at 326-27. Just as in *Delarosa*, Defendants make unsupported effectiveness claims and charge premium prices as a result. *Accord Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1544 (1998) ("facts are material if they would have a significant and measureable effect on market value").

[3] Defendants' assertion that its claims are substantiated and not false, *see* Quten Opp. at 6-7, Tishcon Opp. at 3, do not go to any element of class certification. Nonetheless, the studies Defendants submit paradoxically demonstrate that the claims of the class are susceptible to resolution based on common proof. It is precisely because both parties will be using this sort of evidence, applicable to the claims of each class member, that this action should be resolved on a classwide basis.

---

*Bruno v. Quten Research Institute, LLC et al.*, 8:11-cv-00173 DOC (Ex)
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

'effectively limit[ing] the class claims to those fairly encompassed by the named plaintiff's claims,'" quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982)); *Greenwood v. CompuCredit Corp.*, 2010 U.S. Dist. LEXIS 127719, at *8-9 (N.D. Cal. Nov. 19, 2010) (whether named plaintiffs with personal standing "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation"); *Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426, at *30-31 n.7 (S.D. Cal. July 25, 2011) (the "ability of [a] class representative to assert claims on behalf of absent class members is not a standing issue, but 'depends rather on meeting the prerequisites of Rule 23 governing class actions,'" quoting Alba Conte & Herbert Newberg, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002) ("NEWBERG").

Since there is no dispute that Ms. Bruno has personal standing—her lost money in purchasing an overpriced product is fairly traceable to Defendants' false representation that Qunol offers multiple times better absorption and effectiveness—the relevant question is whether Plaintiff's claims, as a purchaser of Qunol liquid, are typical of the claims of Qunol gelcap purchasers. They are.

### 1.   *Typicality Standard*

"Typicality refers to the nature of the claim . . . of the class representative, and not to the specific facts from which it arose or the relief sought." *Brazil v. Dell, Inc.*, 2010 U.S. Dist. LEXIS 42877, at *7 (N.D. Cal. Mar. 29, 2010) (citation omitted). Typicality is a "permissive standard," *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, at *1020 (9th Cir. Cal. 1998). The requirement is satisfied when each "class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes,* 591 F.3d 1105 (9th Cir. 2010) (citation omitted). Claims need not be identical, rather the standard is "whether other members have the same or *similar* injury," *Hanon v Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted and emphasis added). Accordingly, "claims of named plaintiffs are typical if they relate to a common scheme, even if the mix of products purchased is different." *Pecover v. Elec. Arts*, 2010 U.S. Dist. LEXIS 140632, at *34

4

(N.D. Cal. Dec. 21, 2010) (citing *In re Citric Acid Antitrust Litig.*, 1996 U.S. Dist. LEXIS 16409 (N.D. Cal. 1996)). This is the exact case here because the legal theory each class member would proffer is identical and there is not a substantial divergence in the proof required for claims concerning Qunol liquid and gelcaps.

### 2.    *Qunol Liquid & Gelcaps are the Same Product*

Qunol liquid and gelcaps are marketed and sold for the same purpose and contain the identical active ingredient in the identical amount, 100 mg per serving. Defendants offer no guidance or direction as to which form is preferable for any particular purpose, nor does there appear to be any difference. Even in their Opposition, Defendants refer to the Qunol line as "a series of CoQ10 products with enhanced absorption and dissolution properties as compared to other CoQ10 products on the market." Tishcon Opp. at 2. Consistent with Defendants' treatment of Qunol as a single proprietary product available in different delivery forms, the Quten website's "health benefits" page says, "Don't settle for anything less than Qunol CoQ10. Qunol is available in a number of formulations including Qunol Liquid CoQ10 . . . and Qunol Ultra CoQ10." Unsurprisingly, the packaging and advertising of liquid and gelcaps barely differs. *See* Weston Decl. Exs. A-B. For example:

| Qunol Liquid | Qunol Gelcap |
| --- | --- |
| 6X BETTER ABSORPTION 6 Times More Effective | 3X BETTER ABSORPTION 300% Better Absorption |
| Increases Cellular Energy | Boosts Cellular Energy |
| Supports Heart & Vascular Health | Supports Heart Health |
| Powerful Antioxidant to Fight Free Radicals | Powerful Antioxidant That Fights Free Radicals |
| Beneficial for People Taking Cholesterol-Lowering Statin Drugs | Beneficial to people who take Cholesterol Lowering Statin Drugs |
| 100% Natural CoQ10 | 100% Natural CoQ10 All-Natural Coenzyme Q10 |
| Pharmaceutical Grade | Pharmaceutical Grade |

5

| Clinical Strength | Clinical Strength |
|---|---|
|  |  |

Accordingly, Defendants' reliance on *Wiener* for their typicality argument is misplaced. *See* Tishcon Opp. at 16. In *Wiener*, the Plaintiff purchased Dannon's "digestive health" yogurt, Activia, but did not purchase Dannon's "immunity system" drink, DanActive. 255 F.R.D. at 666. The products contained different active ingredients and were marketed for different purposes—digestion versus immunity. *See id.* Accordingly there was a "substantial divergence" in the evidence required to prove claims concerning Activia and DanActive, and the plaintiff's Activia claims were therefore not typical of DanActive claims. By contrast, the court in *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010), rejected the argument that because "plaintiff did not buy each product in the Blue Sky beverage line [he] would not have claims typical of the entire class," explaining:

> Plaintiff's claims here arise out of the allegedly false statement, worded in several variations, made on every Blue Sky container . . . and therefore arise from the same facts and legal theory. Because plaintiff alleges that all the Blue Sky beverages bore substantially the same misrepresentation, these claims are distinguishable from the class claims alleged in *Wiener* [ ] in which the court held that the named plaintiff was not typical because she had only purchased one of several lines of yogurt, each claiming different health benefits. *Wiener* determined that these differences "lead to a substantial divergence in the evidence" required to prove that the statements were false or misleading. Although plaintiff did not purchase each type of beverage carrying the misleading label, his claims are "reasonably coextensive with those of absent members."

268 F.R.D. at 378 (citations omitted). *See also In re Hitachi TV Optical Block Cases*, 2011 U.S. Dist. LEXIS 135, at *10 (S.D. Cal. Jan. 3, 2011) (plaintiffs' claims were typical because each purchased a Hitachi LCD rear projection television with the same alleged defect); *accord Greenwood*, 2010 U.S. Dist. LEXIS 127719, at *16 (granting class certification where "the solicitation materials may contain subtle differences, they are all alleged to contain the same, or almost the same, combination of deceptive features").

### 3.    There is no "Substantial Divergence" in the Proof Required for Claims Concerning Qunol Liquid and Gelcaps

Although Defendants avoid discussing the key language in *Wiener*, they nevertheless attempt to manufacture "substantial divergence." Their distinctions are without difference, however, because they do not inform the merits of Plaintiff's claims. Plaintiff alleges that "Defendants market their product as having three or six times the absorption rate of comparable brands," but "there is no scientific evidence substantiating such claims." Compl. ¶¶ 18-19. Defendants imply there is "substantial divergence" because their "3X" and "6X" claims are based on different studies. *See* Tishcon Opp. at 17. But Plaintiff alleges that both numerical superiority claims are "unfounded and based on a misinterpretation of studies," *id.* ¶¶ 21, 28, i.e., that both suffer the identical defect and are subject to the same, or at least very similar challenges.

Notwithstanding Plaintiff's consistent legal theory concerning Qunol liquid and gelcaps, Defendants assert that their marketing "differs significantly" because most liquid is sold at Costco where Defendants have occasionally used promoters,[4] while gelcaps are sold in places like Wal-Mart and Walgreens, and have been the subject of more television

---

[4] The use of promoters does not transform this case into *Wal-Mart Stores*. Even if Defendants were correct that "there is no uniform message given by promoters to the customers," Quten Opp. at 5, anyone purchasing the product, whether having first talked to a promoter or not, would necessarily have been exposed to the challenged claims when viewing Qunol on the shelf. Moreover, promoters pour Qunol directly from the bottles displaying the challenged claims. *See* Boutros Decl., Dkt. No. 56 ¶ 18 ("promoters set-up tables, place the Liquid product on the tables, and offer samples"); Bruno Dep. Tr. 69:9-70:6 (describing promoter pouring samples from Qunol bottle).

7

*Bruno v. Quten Research Institute, LLC et al.*, 8:11-cv-00173 DOC (Ex)
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

and print advertising. Quten Opp. at 4-5. All this is irrelevant because Defendants' message about Qunol is always the same: Qunol is multiple times more effective than its competitors. In other words, these contextual details do not detract from the common message that appeared prominently on the packaging of every Qunol bottle—liquid or gel—sold during the class period. Defendants have not argued, much less demonstrated, how these alleged differences affect Plaintiff's claims and render the claims of a liquid Qunol purchaser atypical of a gelcap purchaser. *See Brazil*, 2010 U.S. Dist. LEXIS 42877, at *7-8 (rejecting argument that claims of class members who bought computers via Dell Home & Home Office are atypical of Dell Small & Medium Business purchasers).

## II.   THE CLASS HAS ARTICLE III STANDING

Standing is a threshold issue in every federal case, *Warth v. Seldin*, 422 U.S. 490, 498 (1975), and has three elements: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) the injury must be likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In a class action, however, standing "is assessed solely with respect to class representatives, not unnamed members of the class." *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *14 (quoting *Tobacco II*, 46 Cal. 4th at 319).[5]

Defendants nevertheless contend that a class should not be certified because Ms. Bruno has not demonstrated each absent class member's individual Article III standing, Tishcon Opp. at 5-6, or alternatively, that the determination of absent class members'

---

[5] *See also Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements."); *Lewis v. Casey*, 518 U.S. 343, 395 (1996) (Souter, J., concurring) (class certification "does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs."); *Greenwood*, 2010 U.S. Dist. LEXIS 127719, at *10 ("Plaintiffs are not required to establish absent class members' individual reliance and personal standing"); *Chavez*, 268 F.R.D. at 376 ("unnamed class members [. . .] are not required to establish standing"); NEWBERG § 2.7 ("[P]assive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court").

*Bruno v. Quten Research Institute, LLC et al.*, 8:11-cv-00173 DOC (Ex)
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

individual Article III standing presents a predominating individual question precluding certification pursuant to Rule 23(b)(3), Quten Opp. at 11-12. But Defendants' heavy reliance on *O'Shea v. Epson Am., Inc.*, 2011 U.S. Dist. LEXIS 105504 (C.D. Cal. Sept. 19, 2011) is misplaced. There the court found—unlike in *Stearns v. Ticketmaster Corp.*, 2011 U.S. App. LEXIS 17454, at *13-14 (9th Cir. Aug. 22, 2011) and this case—that the alleged injury was not "traceable to the defendant's conduct," where evidence showed that some proposed class members were never exposed to the alleged misrepresentation. *See id.* at *28-29 & n.8 (citing *Stearns*), *34.

*O'Shea* involved allegations that the plaintiff purchased a Stylus NX 200 inkjet printer relying on a small statement on the large printer box, "[r]eplace only the color you need with individual ink cartridges," which she understood to mean it would only require a single black cartridge to print black text. *See id.* at *1. Evidence in *O'Shea*, however, showed that "individuals who purchased certain models of class printers form certain third-party online sources, such as Amazon.com, were not exposed to the allegedly deceptive representation before they purchased their printers." *Id.* at *34. That evidence rendered the case "not akin to *Stearns*, where each member had purportedly been victimized by the allegedly fraudulent scheme." *Id.* (citing *Stearns*).[6]

Unlike in *O'Shea*, Defendants' false representation that Qunol offers multiple times better absorption and efficacy is a *prominent* and *universal* feature of its packaging and advertising throughout the class period. *See* Weston Decl., Dkt. No. 48 Exs. A-B, E-F;

---

[6] The *O'Shea* court compared its facts instead to *Webb* and *Sanders, id.* at *30, which, like *O'Shea*, are readily distinguishable. *Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011), involved allegations that ink in the label of defendant's garments could cause skin rash—not false advertising. The court found, however, that a large majority of the proposed class members, unlike the plaintiff, were not sensitive to the ink and therefore suffered no injury. *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009), is also distinguishable. There the court found, on a Rule 12 motion in a false advertising suit, that a class defined in the Complaint as "all persons who *own* a twenty-inch Aluminum iMac" was overbroad because, *inter alia*, "[t]his definition necessarily includes individuals who did not *purchase* their 20-inch Aluminum iMac" *Id.* at 991(emphasis added).

Compl. ¶ 12. Unlike Epson in *O'Shea*, Defendants do not claim, nor could they, that proposed class members were never exposed to the challenged claims before purchasing Qunol. Thus, unlike in *O'Shea*, "here, there is no evidence to show that members of the absent class have *not* suffered any injury." *See Yamada v. Nobel Biocare Holding Ag*, 2011 U.S. Dist. LEXIS 92598, at *16 (C.D. Cal. Aug. 12, 2011) (certifying UCL class).

Finally, while the facts in this case are distinguishable from those in *O'Shea*, to the extent it holds reliance is required by unnamed class members, it is wrong. *See Greenwood*, 2010 U.S. Dist. LEXIS 127719, at *4; *Kingsbury v. U.S. Greenfiber, LLC*, 2011 U.S. Dist. LEXIS 71058, at *8 (C.D. Cal. May 23, 2011); *Steroid Hormone*, 181 Cal. App. 4th at 158. That is because the "substantive right extended to the public by the UCL is the right to protection from fraud, deceit and unlawful conduct," so that "the focus of the statute is on the defendant's conduct." *Tobacco II*, 46 Cal. 4th at 324. *See also Miletak v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913, at *12-13 (N.D. Cal. Mar. 5, 2010) ("[A] section 17200 violation [can be shown] even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage," citing *State Farm v. Super. Ct. of Los Angeles County*, 45 Cal. App. 4th 1093, 1105 (1996)); *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005) ("[R]eading reliance into the UCL and the FAL would subvert the public protection aspects of those statutes. The goal of both the UCL and the FAL is the protection of consumers. However, the Court can envision numerous situations in which the addition of a reliance requirement would foreclose the opportunity of many consumers to sue under the UCL and the FAL.").

In false advertising cases under the UCL, FAL and CLRA the relevant inquiry is whether "members of the public are likely to be deceived." *Tobacco II*, 46 Cal. 4th at 312; *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010). Accordingly, those who suffered an economic injury by purchasing Qunol in packaging likely to deceive a reasonable consumer have Article III standing to assert a claim. *Accord Tobacco II*, 46 Cal. 4th at 312, 320 ("relief under the UCL is available without individualized proof of deception, reliance and injury").

10

In *Stearns*, the Ninth Circuit affirmed Plaintiff's interpretation, stating:

> Nor do we agree with Appellees' argument that because it need not be shown that class members have suffered actual injury in fact connected to the conduct of the Appellees, the alternative to the district court's ruling must be that the class lacks standing under Article III of the United States Constitution. No doubt plaintiff's injury must be "concrete and particularized." The injury here meets both of those requirements. Each alleged class member was relieved of money in the transactions. Moreover, it can hardly be said that the loss is not fairly traceable to the action of the Appellees within the meaning of California substantive law.

2011 U.S. App. LEXIS 17454, at *13-14 (citations omitted). In other words, the presumption of reliance in UCL actions "buttresses the ruling that class members suffered Article III injury," *Greenwood*, 2010 U.S. Dist. LEXIS 127719, at *15.

*O'Shea*, then, is best understood as holding that the usual presumption of classwide reliance in UCL cases was rebutted *in that case* by conclusive evidence demonstrating that some proposed class members were not exposed to the allegedly misleading representation before purchase. Defendants make no similar showing here, and where alleged misrepresentations are shown at the point of purchase "it is reasonable to infer that they were communicated to all class members." *Wolph v. Acer Am. Corp.*, 2011 U.S. Dist. LEXIS 35003, at *28 (N.D. Cal. Mar. 25, 2011).

## III.    THE REQUIREMENTS OF RULE 23(a) ARE MET

### A.    Commonality

The commonality prerequisite requires Plaintiff to show that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotations omitted). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with

11

1   divergent factual predicates is sufficient, as is a common core of salient facts coupled with
2   disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

3         Relying on the decision in *Stearns*, Defendants argue that because some consumers
4   "got from the product everything and more that they expected," the commonality
5   requirement is unsatisfied. *See* Quten Opp. at 14. In *Johnson v. Gen. Mills, Inc.*, 2011
6   U.S. Dist. LEXIS 103357 (C.D. Cal. Sept. 12, 2011), the court rejected this argument,
7   noting that the lower court in *Stearns* had held that a finding of materiality,

8         was unwarranted because the class was so broad as to include people who
9         were not *misled* at all, that is, people who knew they were enrolling in a fee-
10        based rewards program. The district court found that it could not assume that
11        because people didn't get rewards or coupons, they must have been misled,
12        because people may have had other reasons for not getting coupons or
13        rewards.

14  *Id.* at *11. In contrast to *Stearns*, in both *Johnson* and this case,

15        [t]he "existence of other reasons" analogy is inappropriate . . . . Defendants
16        assert no facts that support a finding that there were members of the class
17        who were not misled, that is, who knew the yogurt did not provide digestive
18        health benefits. An appropriate analogy to *Ticketmaster* is not consumers
19        who were aware of the digestive health message but bought the yogurt for
20        other reasons, but instead consumers who knew or believed the digestive
21        health message to be false but purchased the yogurt anyway. That some
22        consumers purchased the yogurt for other reasons does not defeat a finding
23        that "a reasonable man would attach importance to its existence or
24        nonexistence in determining his choice of action" as required by *Steroid* for
25        materiality. 181 Cal. App. 4th at 157.

26  *Id.* at *11-12.

27  **B.    Typicality**

28  Plaintiff's claims are typical of the claims of the other class members because they

are identical: all class members purchased Qunol advertised as providing multiple times better absorption and effectiveness than competing brands. Invoking the "unique defense" language of *Hanon*,[7] Defendants argue, in addition to challenging Ms. Bruno's typicality with respect Qunol gelcaps, *see supra* Point I(B), that Plaintiff is atypical because she supposedly (1) "misread" the challenged claim, (2) is not credible, (3) lacks knowledge about an unrelated case, (4) had several reason for purchasing Qunol, *see* Quten Opp. at 15-19, (5) was not misled in the same manner as the class, and (6) did not suffer the same injury as the class, *see* Tishcon Opp. at 16-20. None of these arguments has merit.

### 1.   The "Up To" Language does not Defeat Typicality

When viewing a photo of Qunol's bottle, *see* Weston Decl. Ex. A at 1, the fine-print "up to" disclaimer before the bold "6X BETTER ABSORPTION" claim virtually disappears into the background. It is unsurprising, then, that Ms. Bruno "didn't even notice the 'up to.'" *See* Quten Opp. at 15 (quoting Bruno Dep. Tr. at 117:4-15). That hardly makes her claims atypical. Defendants' "up to" language is in such small type font—likely by design—that many class members undoubtedly missed it.[8]

But there is a more fundamental problem with Defendants' argument that Ms. Bruno "will face individualized challenges based on the lack of care that she took in reading the claim, and will be required to demonstrate that her reading was reasonable." Quten Opp. at 16. Her claims simply do not require a showing that she acted as a reasonable consumer; instead, Plaintiff's claim is that an objectively reasonable consumer would be deceived by Defendants' advertising. *See Miletak*, 2010 U.S. Dist. LEXIS

---

[7] To defeat typicality, "unique defenses" must be "central to the litigation." *Herrera v. LCS Fin. Servs. Corp.*, 2011 U.S. Dist. LEXIS 58288, at *29 (N.D. Cal. June 1, 2011).

[8] Defendants assert that a person who "read the 'up to 6 times' claims correctly . . . necessarily had a different understanding of the claim than Bruno," Quten Opp. at 16. Though Defendants do not say what that understanding is, presumably they mean to suggest that because "up to" is literally equivalent with "not at all," reasonable consumers would disregard the claim. That argument fails. *See generally Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (misleading claims on a food's label were not immunized by contrary information in fine print).

13

26913, at *31 (finding argument that plaintiff was atypical because he did not read his policy documents "unavailing because the Court applies an objective 'reasonable consumer' standard in determining whether Defendants' billing statements or other materials are fraudulent within the meaning of the UCL").

## 2. *No Questions of Credibility Defeat Typicality*

Defendants argue that supposedly inaccurate allegations in the Complaint and the CLRA notification letter mean Ms. Bruno is "not a credible Plaintiff." *See* Quten Opp. at 16. First, Defendants are wrong on the facts. The CLRA letter says Ms. Bruno bought liquid Qunol only; it's erroneous reference to "300mg" rather than "600mg" is simply typographical. Similarly, liquid Qunol *does* bear a "best value" claim. *See* Weston Decl. Ex. B (QUT239) ("Best Results and Best Value!" and "Qunol will also cost you much less than other CoQ10 supplement per mg absorbed making it the best value CoQ10 supplement available.").

But even if Defendants correctly identified inaccuracies in the CLRA letter or Complaint, neither is sworn testimony and Defendants provide no authority this renders a Plaintiff "not credible" or her claims atypical. To the contrary, courts should be wary of "extending an invitation to defendants to try to derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class representative." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011). Moreover, "credibility problems do not automatically render a proposed class representative inadequate." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. Nov. 5, 2010). Instead, "it is only when the representative's credibility bears on matters directly relevant to the litigation, or when the alleged conflict jeopardizes the interests of the class, that the court should find the representative inadequate." *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 638 (N.D. Cal. Dec. 23, 2010) (declining to find inadequate plaintiff who misrepresented facts on a job application and admitted to using drugs and alcohol while employed); *see also Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *28 (despite inconsistencies in plaintiff's testimony, "on this record the Court cannot say his

14

'credibility is so open to question that it is likely to harm [his] case,'" quoting *Buzoiu v. Risk Mgmt. Alternatives, Inc.*, 2004 U.S. Dist. LEXIS 11842, at *15 (E.D. Pa. June 14, 2004)).

### 3. *Plaintiff's Knowledge of a Different Case is Irrelevant*

"The threshold of knowledge required to qualify a class representative is low; a class representative will be deemed inadequate only if 'startlingly unfamiliar' with the case." *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259 , 267 (N.D. Cal. 2011) (citation omitted)). Defendants assert that Ms. Bruno's claims are atypical because during her deposition, she had a difficulty recalling details about the other class action where she served as a lead plaintiff.[9] But Defendants provide no authority for the proposition that Ms. Bruno's knowledge about an unrelated case affects the typicality of her claims in this case, and that argument makes no sense. Moreover, despite that Ms. Bruno has only been involved in these two class actions, Defendants call her a "serial plaintiff," arguing that her claims are atypical for that reason. *See* Quten Opp. at 17. This Court has rejected a similar argument. *See Holloway v. Full Spectrum Lending*, 2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007) (Carter, J.) (rejecting argument that a "professional plaintiff who is closely tied to her lawyers" was inadequate and further finding "repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions" (citations omitted)); *accord Tsirekidze v. Syntax-Brillian Corp.*, 2009 U.S. Dist. LEXIS 61145, at *15 (D. Ariz. July 17, 2009).

### 4. *Plaintiff's Reasons for Buying Qunol do not Make Her Atypical*

Defendants claim that because Ms. Bruno knew what CoQ10 was before purchasing Qunol, and because she purchased it for several reasons including the claim

---

[9] Ms. Bruno filed her suit against Quaker on December 7, 2010, followed almost immediately by a delay of more than six months pending resolution of MDL and consolidation motions. Her case was consolidated with the lead *Quaker* case on June 14, 2011, and Quaker has yet to respond to the amended consolidated complaint. With no substantive activity in *Quaker* since it was filed last year, it is unsurprising that Ms. Bruno might not recall certain details about that action on demand.

15

that it offered multiple times better absorption, her claims are atypical. *See* Quten Opp. at 18. Defendants are wrong, and their argument turns even the common (never mind legal) use of the phrase "typical" on its head. The claim that Qunol offers better CoQ10 absorption than competing products is *aimed* at consumers with some understanding of the substance's benefits. *See, e.g.* Boutros Decl. ¶ 22 (promoters are likely to discuss Qunol absorption with customers familiar with benefits of CoQ10). Further, the fact that Plaintiff bought Qunol in part because she was generally familiar with CoQ10 and liked the taste of the sample does not defeat certification, since a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 328.

### 5.      *Plaintiff's Individual Experience with Qunol is Irrelevant*

Defendants spend a great deal of time discussing Ms. Bruno's individual experiences with Qunol, but they are irrelevant since a plaintiff's California law claims "will be adjudicated under the 'reasonable consumer' standard rather than by examining the individual circumstances of each plaintiff." *Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768, at *43-44 (C.D. Cal. Nov. 9, 2009) (citing *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-34 (1998)). Moreover, Defendants' focus on Ms. Bruno's testimony about the effects of Qunol on her skin, for example, is a straw man. *See* Quten Opp. at 8; Tishcon Opp. at 18-19. Plaintiff's Complaint does not allege that Qunol is ineffective on the basis of her personal subjective experience. Rather, Ms. Bruno was simply answering the questions Defendants posed, not stating her theory of the case. Instead, Plaintiff alleges that the claim that Qunol offers multiple times better absorption is unsubstantiated and therefore false and misleading under California law. *See* Compl.

### 6.      *Plaintiff Suffered the Identical Injury to all Class Members*

"In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005), (citation omitted) "A plaintiff's claim meets this requirement if it arises from the same event or course of

16

conduct that gives rise to claims of other class members . . . ." *Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985). Ms. Bruno alleges injury stemming from the purchase of Qunol. Compl. ¶¶ 32-40 and the class members suffered the same injury: Defendants used unlawful labeling on Qunol to their own economic advantage, inducing class members to purchase a product less effective than advertised, thereby depriving Plaintiff and the class of money and the benefit of their bargain. Thus, Ms. Bruno's claims are coextensive with the proposed class because they involve the same legal claim based on the same course of events. *See Miletak*, 2010 U.S. Dist. LEXIS 26913, at *31. Defendants nevertheless challenge the typicality of Ms. Bruno's claims by asserting that "she has produced no evidence of a 'premium' charged for" Qunol, Tishcon Opp. at 20, and that, in order to allege a premium, she must have comparison shopped before buying Qunol, *see* Quten Opp. at 19. This misconstrues Plaintiff's Complaint, which alleges *both* that Qunol is sold at a premium over competing products,[10] *and* that it "would have cost less absent the false and misleading statements." Compl. ¶ 35.

Plaintiff's allegation that Qunol is priced higher than it would be absent the misleading representations does not depend upon a comparative pricing analysis prior to purchase, and Defendants provide no authority for their assertion that a Plaintiff must comparison shop before purchasing a product in order that her false advertising claims be typical. *See* Quten Opp. at 18-19. Moreover, it is not Ms. Bruno's burden at this stage to *prove* damages, but only to "show that there is a workable classwide methodology to establish damages." *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *6; *see also Ewert v. Ebay, Inc.*, 2010 U.S. Dist. LEXIS 108838, at *31 (N.D. Cal. Sept. 30, 2010) (on class certification, plaintiffs need only identify a "reasonable method for calculating damages on a class-wide basis"). Thus in *Zeisel*, the court was satisfied "Zeisel has demonstrated

---

[10] Contrary to Defendants' assertion, a survey of online pricing shows Qunol is the most expensive CoQ10 sold at BJ's Wholesale and Costco (out of 4 and 5 brands, respectively), the second-most expensive CoQ10 sold at Wal-Mart (out of 11 brands), and the sixth-most expensive CoQ10 sold on Amazon.com (out of the 25 best-selling brands). *See* Persinger Decl. ¶¶ 3-10 & Ex. 1.

1  that common issues of law and fact predominate" because he "contends he will be able to

2  prove the proper amount of restitution by relying on documents produced by Diamond

3  relating to net sales, profits, and costs, as well as retail prices of its Shelled Walnut

4  Products." 2011 U.S. Dist. LEXIS 60608, at *33 (citing *Chavez*, 268 F.R.D. at 379)).

5       In identifying Qunol's price premium over competing brands, Plaintiff has

6  identified an appropriate method for measuring harm to the class that comport with the

7  facts in this case and applicable laws and that is amenable to class-wide treatment. For

8  example, the price differential can be measured by an expert, applying reliable economic

9  models using Defendants' sales data and other common inputs. *Chavez*, 268 F.R.D. at 379

10 (certifying class where plaintiff proposed measuring class-wide damages based on the

11 "price differential between the premium paid for the Blue Sky line of beverages and the

12 lower price of Hansen's mainstream line of beverages"); *Brazil*, 2010 U.S. Dist. LEXIS

13 42877 (certifying class where plaintiffs proposed measuring damages based on additional

14 amount defendant was able to charge due to misrepresentations); *see also Kwikset*, 51

15 Cal.4th at 323-24 (UCL restitution allowed where consumers "surrender in a transaction

16 more, or acquire in a transaction less, than [they] otherwise would have").[11]

17    **C.    Adequacy**

18       Defendants argue that Ms. Bruno is inadequate for the same reasons they previously

19 argued her claims are atypical, i.e., that allegations in the Complaint and CLRA letter, and

20 her supposed lack of knowledge about an unrelated case, render her "not credible." *See*

21 Quten Opp. at 19; Tishcon Opp. at 13 n.2 (adopting Quten's adequacy argument). These

22 arguments should be rejected for the same reasons discussed above.

23

24    [11] Defendants' final contention is also a straw man. Plaintiff's Complaint does not

25 "assert[] that the purported class members have also been (or will also be) injured because

   they may 'lose the benefit of supplementing their bodies' natural CoQ10 production by

26 only taking one-sixth of the recommended dose,' and will also be at increased risk of heart

27 attacks." Tishcon Opp. at 20. Rather, Defendants refer to an argument that claims for

28 monetary damages are incidental to claims for injunctive relief. *See* Mot. at 13.

## IV.    23(b)(2) CERTIFICATION IS PROPER

Citing *Wal-Mart Stores*, Defendants argue that certification pursuant to Fed. R. Civ. P. 23(b)(2) is improper because Plaintiff "seeks recovery of significant money damages." Quten Opp. at 20; *see also* Tishcon Opp. at 20-21. Defendants alternatively argue that Plaintiff's request for injunctive relief is moot since they changed the label of liquid Qunol. *See* Quten Opp. at 20. Neither is correct.

### A.    Plaintiff's Request for Monetary Relief is Incidental to Injunctive Relief

Rule 23(b)(2) certification is "not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." *Linney v. Cellular Alaska P'ship.,* 151 F.3d 1234, 1240 n.3 (9th Cir. 1998) (citation omitted). Nevertheless, a class may not be certified under Rule 23(b)(2) where "monetary relief is not incidental to the injunctive or declaratory relief," *Wal-Mart Stores*, 131 S. Ct. at 2557. Unlike in *Wal-Mart Stores*, here the proposed monetary relief *is* incidental, so Rule 23(b)(2) certification is appropriate.

"The Ninth Circuit has declined to adopt a bright line rule distinguishing between incidental and nonincidental damages." *Ugas v. H&R Block Enters., LLC*, 2011 U.S. Dist. LEXIS 86769, at *6 (C.D. Cal. Aug. 4, 2011). In *Ugas*, after "carefully consider[ing] . . . the Supreme Court's decision in [*Wal-Mart Stores*]," the court held that to determine whether final relief "relates exclusively or predominantly to money damages," it must:

examine the specific facts and circumstances of each case, focusing predominantly on the plaintiffs' intent in bringing the suit. To certify a class under Rule 23(b)(2) there must be a finding that (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.

*Id.* at *6 (citations omitted).  Here, both tests are met. Plaintiff reasonably may seek to enjoin false advertising even absent monetary recovery, which is likely very small. *Accord*

19

1   Quten Opp. at 8 (noting that Plaintiff brought this suit despite being aware of lenient
2   return policy). In addition, the injunctive relief Plaintiff seeks is necessary and appropriate
3   should Plaintiff succeed on the merits. *See Comm. on Children's Television, Inc. v. Gen.*
4   *Foods Corp.*, 35 Cal. 3d 197, 210 (1983) (The UCL, is directed towards the right of the
5   public to protection from fraud and deceit" and by enacting this section, "the Legislature .
6   . . intended to permit courts to enjoin ongoing wrongful business conduct in whatever
7   context such activity might occur." (internal citations and quotations omitted)).

8       Monetary relief is also incidental to injunctive relief where damages "flow directly
9   from liability to the class as a whole on the claims forming the basis of the injunctive
10  relief." *Delarosa*, 2011 U.S. Dist. LEXIS 106248, at *27-28 (quoting *Wal-Mart Stores*,
11  131 S. Ct. at 2560 (citation omitted)). *Delarosa* involved certification of CLRA and UCL
12  claims against a dietary supplement manufacturer over misleading labeling claims. The
13  court held that a plaintiff's claims for actual damages, punitive damages and statutory
14  damages were all incidental to her claim for an injunction prohibiting the allegedly
15  misleading claims. *See id.* at *25-34. Claims for restitution are incidental to claims for
16  injunctive relief where they are "limited to the amounts actually and reasonably expended
17  in reliance upon the fraud," and "proof of purchase, i.e. proof of harm, would entitle each
18  class member to the same restitution." *Id.* at *29-30 (citations omitted). Claims for
19  punitive damages are likewise incidental to claims for injunctive relief where
20  "Defendant's intentional misrepresentation was identical for each class member" and "[a]
21  determination as to whether Defendant knew that the statement . . . was false will . . .
22  permit the fact finder to grant the injunctive relief sought and to grant punitive damages."
23  *Id.* at *31.

24      Here, Plaintiff claims that Defendants made the same misrepresentations regarding
25  the effectiveness of Qunol to every class member, thereby inducing them to purchase
26  Qunol at a premium price. A determination that Defendants knowingly and intentionally
27  made this false representation would permit a jury to grant injunctive relief and award
28  punitive damages to Plaintiff, therefore rendering them incidental to her claims for

20

injunctive relief. Moreover, the moderate cost of the premium paid for Qunol renders the potential damages available for any class member small. This is in contrast to *Wal-Mart Stores*, where substantial back pay was sought by *former* employees who would receive no benefit from the proposed injunctive relief targeting policies governing *current* employees. *See* 131 S. Ct. at 2557.[12]

### B.    Plaintiff's Request for Injunctive Relief is not Moot

Defendants claim Ms. Bruno's request for injunctive relief is moot because it removed one of the challenged claims. Others, however, remain. In addition, Plaintiff seeks to compel destruction of deceptive advertising and product labels, and a corrective advertising campaign. *See* Compl. at 15 (Prayer for Relief). Further, a defendant cannot moot a claim for injunctive relief by ceasing unlawful conduct. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (Collecting authority and stating, "defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." (citation omitted)). Finally Defendants maintain the one claim it removed is true. *See, e.g.*, Quten Opp. at 3. Defendants' insistence that the absorption claim it removed is substantiated notwithstanding an investigation finding otherwise, *see, e.g.*, Quten Opp. at 3, highlights the possibility that Defendants might bring the claim back in the future.

## V.    23(b)(3) CERTIFICATION IS PROPER

### A.    Predominance

"The predominance requirement of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009)) (internal quotations and citations

---

[12] Even if the Court determines that Plaintiff's claims for monetary relief are not incidental to her claims for injunctive relief, it may still "carve out" the injunctive relief claim for certification under Rule 23(b)(2) while certifying the monetary claims under Rule 23(b)(3). *See, e.g.*, *Aho*, 2011 U.S. Dist. LEXIS 80426, at *18-21.

1   omitted).[13] Class certification is proper under Rule 23(b)(3) when "common questions
2   present a significant aspect of the case and they can be resolved for all members of the
3   class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (citation omitted). The central
4   questions in this case overwhelmingly predominate over any individual question and
5   include, for example: (1) whether Defendants communicated a representation, through
6   Qunol packaging and other marketing, that Qunol offers multiple times more absorption
7   and effectiveness than competing CoQ10 products; (2) if so, whether that representation
8   was material to individuals purchasing Qunol; (3) whether the representation was truthful;
9   and (4) the proper method for calculating their damages. *See Johnson v. Gen. Mills, Inc.*,
10  2011 U.S. Dist. LEXIS 45120, at *8-9 (C.D. Cal. Apr. 20, 2011).

11          Moreover, the question of class members' exposure to the challenged
12  misrepresentations, *see* Tishcon Opp. at 22-23, is not one of predominance but
13  ascertainability, and is addressed by the class definition. *See* Mot. at 2. "In order to
14  properly ascertain a class, the definition must specify a distinct group of plaintiffs whose
15  members [can] be identified with particularity." *Charlebois v. Angels Baseball, LP*, 2011
16  U.S. Dist. LEXIS 71452, at *7 (C.D. Cal. June 30, 2011) (Carter, J.). A class is
17  ascertainable if it is "administratively feasible for the court to determine whether a
18  particular individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 284 F.R.D. 311, 319
19  (C.D. Cal. 1998). "Objective criteria must be used to ascertain class members."
20  *Charlebois*, 2011 U.S. Dist. LEXIS 71452, at *7 (citing 5 MOORE'S FED. PRAC. §
21  23.21[a]). Here the definition is completely objective, namely: (1) all persons, (2) in the
22  United States, (3) who purchased on or after January 31, 2007, (4) for personal or

23  _____

24  [13] "In order to determine whether common issues predominate, the Court must analyze
    the elements of each of the claims [plaintiff] asserts against [defendant]." *Zeisel*, 2011
25  U.S. Dist. LEXIS 60608, at *30-31 (citing *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D.
    330, 342 (N.D. Cal. 2010))). Though Plaintiff discussed her warranty claim extensively,
26  *see* Mot. at 10, 19-21, in 50 pages of briefing, Defendants address the warranty claim with
27  a single non-substantive footnote. *See* Tishcon Opp. at 15 n.3. Accordingly, they concede
    certification of that claim is proper.
28

*Bruno v. Quten Research Institute, LLC et al.*, 8:11-cv-00173 DOC (Ex)
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1   household use and not for resale, (5) Qunol in packaging stating that it offers multiple

2   times better absorption or effectiveness. *Compare Chavez*, 268 F.R.D. 365; *Zeisel*, 2011

3   U.S. Dist. LEXIS 60608, at *20-21.

4         **B.   Superiority**

5         Most of Defendants' arguments concerning superiority are rehashed versions of

6   earlier arguments. *See* Tishcon Opp. at 24-25 (arguing class adjudication is not superior

7   because individual issues predominate). However, Defendants' additional arguments, that

8   class treatment is not the superior method for adjudicating Plaintiff's claims because the

9   "6X" claim is no longer used and class members can supposedly obtain refunds from

10  retailers, *see id.* at 25, are wrong. As previously noted, the relief Plaintiff seeks is broader

11  than cessation of the "6X" claim and a refund, and Defendants provide no authority or

12  even explanation for why a defendant's cessation of a misleading claim renders class

13  adjudication an inferior method for determining liability and damages for when the claim

14  was being used. As for refunds, *Webb* is easily distinguishable. *See* Tishcon Opp. at 25. In

15  *Webb*, the defendant set up a *special* refund policy to address the specific concerns raised

16  about the product at issue. 272 F.R.D. at 496. This policy relaxed the receipt requirements

17  of defendant's traditional policy allowing for a larger refund to those without receipts;

18  offered reimbursements for medical costs resulting from any harm caused by the product,

19  allowing up to $250 in medical costs without any documentation, in order to address all

20  forms of relief plaintiff sought; and offered affected children an additional gift. *Id.* at 496,

21  504. Defendant also made a public statement about the possible adverse effects of using

22  the product and put consumers on notice that they could seek a refund. *See id.* at 496.

23        In contrast, Defendants here rely on the return policies of multiple retailers,

24  without any proof they would accept returns of all Qunol purchased during the class

25  period, even without receipt. Nor have Defendants made an announcement that would lead

26  class members to seek a refund. Finally, Plaintiff seeks relief that cannot be satisfied by

27  the varying return policies of Qunol retailers. Thus, unlike in *Webb*, Plaintiff and the class

28  cannot obtain "the very relief that [they] seek[]," as Defendant contends.

23

1    **VI.    A NATIONWIDE CALIFORNIA LAW CLASS IS PROPER**

2        **A.    Nationwide Application of California Law does not Violate Due Process**

3        "[T]he Due Process Clause . . . provide[s] *modest* restrictions on the application of

4    forum law." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (emphasis added).

5    A state only "must have *a significant contact* or significant *aggregation of contacts*,

6    creating state interests, such that choice of its law is neither arbitrary nor fundamentally

7    unfair." *Id*. (emphasis added). Due Process serves only to prevent the extreme of applying

8    the law of a state "only casually or slightly related to the litigation." *Id* at 819.

9        Defendants' contacts with California relating to the claims of this case are not

10   "casual" or "slight," but include maintaining the corporate headquarters of the marketing

11   business in California during the class period,[14] and selling approximately 30% of all

12   Qunol in California. *See* Mot. at 22. Such contacts have been held to satisfy *Shutts*. *See,*

13   *e.g.*, *Parkinson v. Hyundai Motor Am*., 258 F.R.D. 580, 589 (C.D. Cal. 2008) (certifying

14   nationwide California-law class where defendant had California operations and a

15   significant number of class members resided in California); *Keilholtz*, 268 F.R.D. at 334

16   (applying California law to nationwide class where 19% of nationwide sales were in

17   California). Accordingly, California law may be applied to a nationwide class without

18   violating Defendants' right to Due Process.

19       **B.    Defendants did not Satisfy their California Choice-of-Law Burden**

20       Because the application of California law to the claims of the class does not violate

21   due process, it was Defendants' burden to show that foreign law, rather than California

22   law, should apply. *Keilholtz*, 268 F.R.D. at 340 (citing *Martin v. Dahlberg*, 156 F.R.D.

23   207, 218 (N.D. Cal. 1994); *Pecover*, 2010 U.S. Dist. LEXIS 140632, at *53; *Wolph*, 272

24   F.R.D. at 485. As the proponent of foreign law, Defendants bore the burden of

25   _____

26   [14] Defendants' concentration on their *current* location and status is misplaced, since
     the inquiry properly focuses on the class's claims, which arose while Quten, the
27   "marketing company" for Qunol, *see* Mot. at 3, was headquartered in Califorina at the
     address appearing on every Qunol bottle class members purchased.
28

demonstrating that another state's law (1) is materially different than California's, (2) actually conflicts with California's, and (3) that that state has a greater interest in application of its law than California because its interests would be "more impaired" if its law were not applied. *See Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 919-20 (2001); *Wolph*, 272 F.R.D. at 484-86.

Defendants have not even attempted to make that showing, nor may they rely on general language from *In re Hitachi*, *see* Quten Opp. at 24, Tishcon Opp. at 9, to convince this Court of material differences, since they must show materiality "on the facts of this case." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. Cal. 2010); *see also Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 622 (C.D. Cal., 2008) ("Defendant's analysis fails to show that these differences are in fact material."). The Court need only "proceed to the second step" of the governmental interest test if it "finds the laws are materially different." *See Was. Mut.*, 24 Cal. 4th at 919. On the other hand, "if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied, even if there were a conflict, California law would prevail based on the third prong . . . ." *Pecover Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, 2000 U.S. Dist. LEXIS 13138, at *59 (S.D.N.Y. Sept. 12, 2000) (citations and internal quotations omitted); *accord Ameron Int'l Corp. v. Am. Home Assur. Co.*, 2011 U.S. Dist. LEXIS 61486, at *28 (C.D. Cal. June 6, 2011) ("the application of California law will not substantially impair Hawaii's interests").

Accordingly, the Court may properly apply California law to the claims of a nationwide class. If the Court nevertheless finds the nationwide application of California law inappropriate, Plaintiffs respectfully request that the Court certify a California-only class.

## CONCLUSION

Plaintiff respectfully requests that the Court grant her Motion.

25

1    DATED: October 3, 2011                    Respectfully Submitted,

2
                                              /s/ Gregory S. Weston
3                                             **THE WESTON FIRM**
                                              GREGORY S. WESTON
4                                             JACK FITZGERALD
                                              MELANIE PERSINGER
5                                             COURTLAND CREEKMORE
                                              1405 Morena Blvd., Suite 201
6                                             San Diego, CA 92110
                                              Telephone:   619 798 2006
7                                             Facsimile:    480 247 4553
8
9
                                              **LAW OFFICES OF RONALD A.**
10                                            **MARRON, APLC**
                                              RONALD A. MARRON
11                                            3636 4th Avenue, Suite 202
                                              San Diego, CA 92109
12                                            Telephone:   (619) 696 9066
                                              Facsimile:    (619) 564 6665
13
14
15                                            Counsel for Plaintiff and the
                                              Proposed Classes
16
17
18
19
20
21
22
23
24
25
26
27
28

                                    26

*Bruno v. Quten Research Institute, LLC et al.*, 8:11-cv-00173 DOC (Ex)
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION