**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
B. SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, CA 92109
Telephone:   (619) 696-9006
Facsimile:    (619) 564-6665

__Class Counsel__

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| KELLEY BRUNO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUTEN RESEARCH INSTITUTE, LLC, and TISHCON CORPORATION,<br><br>Defendants. | Case No. 8:11-cv-00173 DOC (Ex)<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED *EX PARTE* APPLICATION FOR AN ORDER (1) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVING NOTICE PLAN; (3) SETTING FINAL APPROVAL HEARING; and (4) RE-CAPTIONING CASE**<br><br>Judge: The Hon. David O. Carter |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

FACTS AND PROCEDURAL HISTORY ......................................................................... 2

SUMMARY OF THE SETTLEMENT ............................................................................. 4

    I.      INJUNCTIVE RELIEF ......................................................................... 4

    II.     MONETARY RELIEF ......................................................................... 4

    III.   THE PROPOSED NOTICE PLAN ..................................................... 5

REASONS TO GRANT PRELIMINARY APPROVAL .................................................. 5

    I.      STANDARDS FOR PRELIMINARY APPROVAL ......................... 5

    II.     THE SETTLEMENT WARRANTS PRELIMINARY
           APPROVAL ........................................................................................ 7

          A.    The Settlement Agreement was Reached at Arm's Length
               After Extensive Investigation and Discovery ..................................... 7

          B.    The Settlement Does Not Grant Preferential Treatment to
               the Class Representative or Any Segment of the Class ....................... 8

          C.    The Proposed Settlement Falls Within the Range of Possible
               Approval, has no Obvious Deficiencies, and is Fair,
               Reasonable, and Adequate .................................................................. 9

               i.     The Strength of Plaintiff's Case ............................................. 10

               ii.    Complexity, Expense, and Probable Length of the
                      Class Litigation ....................................................................... 11

i

iii.   Range of Recovery ................................................. 11

iv.   The Extent of Discovery Completed and the Stage of the Proceedings .......................................................... 13

v.   The Experience and Views of Counsel .................................... 13

vi.   The Reaction of Class Members to the Proposed Settlement ................................................................. 14

III.   THE PROPOSED NOTICE PLAN SATISFIES RULE 23 AND DUE PROCESS ........................................................ 14

IV.   THE PROPOSED TIMELINE SHOULD BE ADOPTED ......................... 15

V.   THE COURT SHOULD RE-STYLE THE ACTION ................................ 15

CONCLUSION .......................................................................... 16

ii

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adachi v. Carlyle/Galaxy San Pedro, L.P.*,
  No. 2:09-cv-793-MMM-AJW (C.D. Cal.) .............................................................1

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ......................................................................13

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ..........................................................................5, 14

*City of Detroit v. Ginnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................11

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..............................................................................9

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ............................................................................13

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 159 (1974) ............................................................................................14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................6, 9, 12, 14

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ..............................................................................11

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992).................................................................................9

*In re Employee Benefit Plans Secs. Litig.*,
  1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) ......................................13

*In re Endocare Inc. Sec. Litig.*,
  No. 2:02-cv-8429-DT–CT (C.D. Cal.) ...................................................................1

*In re Ferrero Litig.*,
  No. 3:11-cv-20-H-KSC (S.D. Cal.) ........................................................................1

*In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................ 7

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ........................... 7

*In re M.L. Stern Overtime Litig.*,
   2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ............................ 6

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................... 12

*In re Mercury Interactive Corp. Secs. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ..................................................................... 2

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ................................................................. 14

*In re Nucoa Real Margarine Litigation*,
   No. 2:10-cv-927-MMM-AJW (C.D. Cal.) ................................................. 1

*In re Nvidia Derivs. Litig.*,
   2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009) ....................... 11

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................... 5, 13

*In re Specialty Labs Inc. Sec. Litig.*,
   No. 2:02-cv-03728-DDP-RC (C.D. Cal.) .................................................. 1

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................... 8

*Knight v. Red Door Salons, Inc.*,
   2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ................... 6, 13, 14

*Manchaca v. Chater*,
   927 F. Supp. 962 (E.D. Tex. 1996) .......................................................... 8

*McAlarnen v. Swift Transp. Co.*,
   2010 U.S. Dist. LEXIS 7877 (E.D. Pa. Jan. 29, 2010) ............................ 13

iii

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) ................................................................14

*Misra v. Decision One Mortg. Co.*,
   2009 U.S. Dist. LEXIS 119468 (C.D. Cal. Apr. 13, 2009) ...........................7, 9, 10

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ..................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...............................................................................14

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................................11, 13

*Officers for Justice v. Civil Serv. Com.*,
   688 F.2d 615 (9th Cir. 1982) ................................................................5, 6

*Pilkington v. Cardinal Health, Inc.*,
   516 F.3d 1095 (9th Cir. 2008) ..............................................................5

*Riker v. Gibbons*,
   2010 U.S. Dist. LEXIS 120841 (D. Nev. Oct. 27, 2010) .........................12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................10

*Rodriguez v. West Publ. Corp.*,
   2007 U.S. Dist. LEXIS 74849 (C.D. Cal. Aug. 10, 2007) ......................11

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................7

*West v. Circle K Stores, Inc.*,
   2006 U.S. Dist. LEXIS 42074 (E.D. Cal. June 12, 2006) .....................7, 9, 10

*White v. Experian Info. Solutions, Inc.*,
   803 F. Supp. 2d 1086 (C.D. Cal. 2011) ..............................................12

**STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...............................................2

Cal. Bus. & Prof. Code §§ 17500 *et seq* .................................................2

iv

Cal. Civ. Code §§ 1750 *et. seq*.............................................................................2

**OTHER AUTHORITIES**

4 Newberg on Class Actions §11.25 (4th ed. 2002) .............................................6, 8, 14

Manual for Complex Litigation §21.632 (4th ed. 2005)........................................6, 14

Moore's Federal Practice, 23.165[3] (3d ed. 2005) .......................................................6

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................14

Fed. R. Civ. P. 23(e)..............................................................................................9

*Bruno v. Quten Research Institute, LLC et al.,* Case No. 8:11-cv-00173 DOC (Ex)
Unopposed *Ex Parte* Motion for Preliminary Approval of Settlement

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, pursuant to C.D. Cal. L.R. 7-19, Plaintiff Kelley Bruno respectfully moves *ex parte* for an order (1) granting preliminary approval of the class action settlement dated October 15, 2012 ("Settlement Agreement" or "Settlement"); (2) approving the form and manner of notice; (3) setting a hearing date for final approval; and (4) re-captioning this action *In re Qunol Liquid Litigation*. This motion is based on this Notice of Motion and Motion; the concurrently-filed Declaration of Gregory S. Weston ("Weston Declaration"), and exhibits thereto; all previous proceedings had in this matter to date; and all further evidence and argument submitted in support of or against the motion.

Class Counsel met and conferred with Defendants' counsel multiple times with respect to the requested relief. Defendants do not oppose.

## INTRODUCTION

Pursuant to the Court's September 19, 2012 Order (Dkt. No. 166), and C.D. Cal. Civ. L.R. 7-19, Representative Plaintiff Kelley Bruno respectfully moves *ex parte* for an order (1) granting preliminary approval of the Class Action Settlement[1] dated October 15, 2012; (2) approving the form and manner of notice; (3) setting a hearing for final approval; and (4) re-captioning this action *In re Qunol CoQ10 Liquid Litigation*. Courts often hear and grant preliminary approval on an *ex parte* basis.[2]

In brief, this is a consumer fraud class action challenging Defendants' "6x" more effective and more absorption marketing of their product, Qunol Liquid. The settlement

---

[1] The "Settlement Agreement," attached to Weston Declaration as Exhibit 1.

[2] *See*, *e.g.*, *In re Nucoa Real Margarine Litig.*, No. 2:10-cv-00927-MMM-AJW (C.D. Cal.) (Dkt. Nos. 132, 139); *Adachi v. Carlyle/Galaxy San Pedro, L.P.*, No. 2:09-cv-793-MMM-AJW (C.D. Cal.) (Dkt. Nos. 97, 101); *In re Specialty Labs Inc. Sec. Litig.*, No. 2:02-cv-3728-DDP-RC (C.D. Cal.) (Dkt. Nos. 65, 68); *In re Endocare Inc. Sec. Litig.*, No. 2:02-cv-8429-DT–CT (C.D. Cal.) (Dkt. Nos. 96, 99); *In re Ferrero Litig.*, No. 3:11-cv-20-H-KSC (S.D. Cal.) (Dkt. Nos. 105, 108).

---

1

occurred only about three weeks before trial, and provides Defendants will refrain from using the challenged phrases and pay class members who complete a claim form $3.55 per bottle of Qunol Liquid. No proof of purchase is needed to make claims for up to three purchases, while claims for a larger number of purchases can be documented either by receipts and/or product packaging, and there is no total limit on the number of claims Defendants will pay. Defendants also agree to pay attorney fees and an incentive award of up to $410,000 and $8,000 should the Court award them.

A proposed schedule and set of deadlines is described herein and in the proposed order, which Plaintiff prepared keeping in mind the notice requirements of the Class Action Fairness Act and *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). The specific proposed dates are premised on the parties' hope that Court will grant this motion before October 26, 2012. Should the Court grant this motion on a later date, Plaintiff respectfully requests all of the proposed hearings and deadline dates be continued one week for each additional week this motion is under submission, and she will also revise accordingly these dates in the proposed class notice.

## FACTS AND PROCEDURAL HISTORY

On January 31, 2011, Plaintiff filed her initial class action Complaint (Dkt. No. 1) for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the False Advertising Law, *id.* §§ 17500 *et seq.*, and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et. seq.* (Compl. ¶¶ 52-74.) Plaintiff alleged that Defendants deceptively marketed their Qunol CoQ10 products as possessing superior bioavailability, absorption, effectiveness and value in comparison to competing products. (*Id.* ¶¶ 19-40.)

On March 14 and April 6, 2011, Defendants Quten Research Institute, LLC and Tishcon Corporation filed their Answers. (Dkt. Nos. 6, 17.) On June 24, 2011, Defendants filed a Motion to Strike Class Allegations From Complaint (Dkt. No. 26), which the Court denied (Dkt. No. 32).

On September 19, 2011, Plaintiff filed her Motion for Class Certification, which

2

Defendants opposed. (Dkt. Nos. 47, 55, 58.) The Court granted Plaintiff's Motion in part, certifying a class of:

> All persons, excluding officers, directors, and employees of Quten Research Institute LLC or Tishcon Corp. and their immediate families, who on or after January 31, 2007 purchased Qunol CoQ10 in the United States for personal or household use rather than resale or distribution, in packaging stating that Qunol offers **six** times better absorption or effectiveness.

(Dkt. No. 73 at 23-24.)[3]

On January 30, 2012, Defendants filed a Joint Motion to Decertify the Nationwide Class, which Plaintiff opposed. (Dkt. Nos. 86, 87.) On March 6, 2012, the Court denied Defendants' Motion. (Dkt. No. 95.)

On June 18, 2012, Plaintiff moved for approval of her Class Notice Plan, which Defendants opposed. (Dkt Nos. 99, 104). The Court granted the Motion in part, requiring Plaintiff to revise portions of the notice, which she did. (Dkt. Nos. 133, 136.) The Court left open the question of which party should bear the cost of notice, however, and requested supplemental briefing, which the parties filed on July 23, 2012. (Dkt. Nos. 137-38.) Because the Court had not issued its decision by the time notice was required, however, Plaintiff paid for the cost of notice.

On June 25, 2012, Defendants filed a Motion for Summary Judgment (Dkt. Nos. 101-03) and a Motion to Exclude the report and testimony of Plaintiff's expert, Dr. John Carlow (Dkt. Nos. 110-12), which Plaintiff opposed (Dkt. Nos. 126-31). The Court held a hearing on August 9, 2012, denying the Motion to Exclude (without prejudice to renewing the application as a motion *in limine*), taking the summary judgment motion under submission, and setting trial for October 2, 2012. (Dkt. No. 149.)

---

[3] As a result of the Court's class certification decision, the case was thereafter limited to Defendants' Qunol CoQ10 *Liquid* product, which claimed "6X" more absorption, notwithstanding that Plaintiff's Complaint initially also challenged Defendants' gelcap CoQ10 product, which claimed "3X" more absorption.

The case proceeded towards trial, and the parties submitted Memoranda of Contentions of Law and Fact, Witness Lists, and a Joint Exhibit List. (Dkt. Nos. 154-58.) The parties were set to submit a total of nine motions *in limine* on September 14, 2012; that day, however, they reached an agreement in principal to settle the case, signing a term sheet embodying the material terms of the settlement. Accordingly, Plaintiff filed a Notice of Settlement and *Ex Parte* Application to Hold the Action in Abeyance pending the filing of a Motion for Preliminary Approval, which the Court granted, directing the parties to file the Motion within 30 days after September 19, 2012. (Dkt. Nos. 162, 166.)

## SUMMARY OF THE SETTLEMENT

### I.   INJUNCTIVE RELIEF

Defendants agree to refrain from labeling or advertising Qunol CoQ10 Liquid as six times more effective, or providing six times more absorption than competing products or "regular CoQ10" for a ten-year period, unless they have new competent and reliable scientific evidence that supports the claim. (Settlement Agreement ¶ 4.1.1.) Defendants have also agreed to request any licensed or direct shipment online or catalog vendors of the product to remove marketing materials making such claims.

### II.   MONETARY RELIEF

Defendants agree to provide restitution to any class member who makes a claim by signing an online declaration. Class Members may obtain $3.55 per Qunol bottle purchased for up to three bottles without proof of purchase, while there is no cap with proof of purchase, for example a receipt or product packaging. (*Id.* ¶¶ 4.2.) Defendants also agree to pay the costs of class notice and administration, up to $62,000, with Defendants and Class Counsel agreeing to split any additional notice and administration costs. (*Id.* ¶ 5.1.1-5.1.3.) Finally, Defendants agree to pay, upon Court approval, an incentive award to Plaintiff up to $8,000, and attorneys' fees and expenses up to $410,000. (*Id.* ¶ 9.1-9.2.)

4

### III.   THE PROPOSED NOTICE PLAN

The parties have developed a notice and administration plan with the assistance of SEOmap Inc., modeled on the Notice Plan the Court already approved with respect to class certification. Much like the class certification notice, the settlement notice will be disseminated via banner ads on dozens of popular websites, including Facebook and various sites within the 24/7 Real Media Network. These ads for the settlement website will be displayed over 100 million times. (*See id.* Ex. 4.) Plaintiff's counsel will also send the notice by email or first class mail to the approximately 300 class members whose email or physical addresses are known.

The notice is designed to provide potential class members with information about the settlement and their rights, in easy-to-comprehend language. It contains a general description of the lawsuit, the settlement relief, how a claim can be filed, and a description of the class members' rights. The notice website, in addition to containing the notice itself, will also contain: (1) both an online claim form and a paper version that can be submitted by fax or postal mail (*id.* Exs. 2, 1); (2) the Settlement Agreement (Weston Decl. Ex. A); (3) this Motion for Preliminary Approval; (4) if and when issued, the Order granting preliminary approval; (5) the Motion for Attorneys' Fees, Expenses, and Incentive Award; and (6) instructions on the filing of objections. The site will comply with standards allowing it to be viewed by persons with visual impairments, and claim form submissions will be encrypted to protect the privacy of class members.

### REASONS TO GRANT PRELIMINARY APPROVAL

### I.   STANDARDS FOR PRELIMINARY APPROVAL

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The approval of a proposed class action settlement is a matter within the trial court's discretion. *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). In making this

5

determination, courts should evaluate the fairness of the settlement in its entirety. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness"). Thus, a court's evaluation of a class action settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord Hanlon*, 150 F.3d at 1027.

Court approval of class settlements is "a two-step process—preliminary approval, followed by final approval of the settlement after notice to the class." *In re M.L. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, at *8 (S.D. Cal. Apr. 13, 2009). At the preliminary approval stage, the Court makes only a preliminary determination of the fairness, reasonableness and adequacy of the settlement so that notice may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding its fairness, reasonableness and adequacy. *See* Alba Conte & Herbert Newberg, 4 NEWBERG ON CLASS ACTIONS §11.25 (4th ed. 2002) [hereinafter NEWBERG ON CLASS ACTIONS]; MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2005).

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009). Additionally, a party's motion for preliminary approval does not demand a final analysis of the settlement's merits. Instead, a more detailed assessment is reserved for the final approval after class notice has been sent and class members have had the opportunity to object to or opt-out of the settlement. *See* MOORE'S FEDERAL PRACTICE, 23.165[3] (3d ed. 2005). Accordingly:

> Preliminary approval of a settlement and notice to the proposed class is appropriate if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious

6

deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with[in] the range of possible approval[.]

*Vasquez v. Coast Valley Roofing, Inc.* 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation and internal quotations omitted); *see also Misra v. Decision One Mortg. Co.*, 2009 U.S. Dist. LEXIS 119468, at *9 (C.D. Cal. Apr. 13, 2009) (Carter, J.) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval . . . ."); *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 42074, at *34 (E.D. Cal. June 12, 2006) ("[A]t this preliminary approval stage, the court need only determine whether the proposed settlement is within the range of possible approval." (internal quotations omitted)).

## II.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Settlement Agreement should be preliminarily approved because it readily satisfies the *Vasquez* criteria.

### A.    The Settlement Agreement was Reached at Arm's Length After Extensive Investigation and Discovery

"A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005). Moreover, if the terms of the settlement are fair, courts generally assume the negotiations were proper. *See In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

Before filing the Complaint on behalf of Ms. Bruno, Class Counsel conducted an extensive investigation into Plaintiff's claims. Thereafter, the parties litigated the action for more than 19 months, completing fact and expert discovery and filling the docket with 166 entries, many containing exhibits and supporting documents. Discovery included extensive document production by both Defendants; Plaintiff's production of

7

over 600 pages of documents; four depositions, including Plaintiff and Defendants' principals; two third-party subpoenas and documents produced in response to them; and multiple sets of interrogatories and responses. This discovery included information about Qunol's marketing and advertising, Defendants' related internal and external communications, independent reviews of Defendants' Qunol advertising, and relevant financial information. In addition, the parties solidified their positions for trial through summary judgment briefing, which gave each side a clear view of its strengths and weaknesses.

Therefore, by the time the Parties began to negotiate the Settlement, Class Counsel had an in-depth understanding of the factual and legal strengths and weaknesses of Plaintiff's claims, and were able to engage in a rigorous negotiation process with counsel for Defendants.[4] As the Settlement achieves the principal goals of the litigation—cessation of the challenged conduct, Defendants' agreement to refrain from similar future conduct, and restitution for up to three Qunol purchases without proof or unlimited restitution with proof of purchase—the Court should infer it was the result of arms' length negotiations and devoid of fraud or collusion. *See* NEWBERG ON CLASS ACTIONS, § 11.28, at 11-59 (Counsel are "not expected to prove the negative proposition of a noncollusive agreement.").

## B. The Settlement Does Not Grant Preferential Treatment to the Class Representative or Any Segment of the Class

The Settlement Agreement provides identical relief to all Class Members, including the Class Representative. Defendants will provide restitution to all Class Members, including the Class Representative, who timely make a claim and provide proof of Qunol purchase or affirm that they purchased Qunol. Moreover, the injunctive

---

[4] Class Counsel are experienced in prosecuting complex class action claims like those raised here (*see* Dkt. No. 48 at ¶¶ 12-26), and were therefore in a strong position to make an informed decision regarding the reasonableness of the Settlement. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

relief is applicable to the Class as a whole.[5] Accordingly, the Settlement Agreement does not give preferential treatment to any of the Class Representatives or segments of the class.

### C. The Proposed Settlement Falls Within the Range of Possible Approval, Has No Obvious Deficiencies, and is Fair, Reasonable, and Adequate

Under Federal Rule 23(e), the Court must determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle* 955 F.2d 1268, 1276 (9th Cir. 1992). The Ninth Circuit has established several factors that should be weighed when assessing whether a proposed settlement meets this standard: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026; *see also Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). As explained in *West v. Circle K Stores, Inc.*, however, "[g]iven that some of these factors cannot be fully assessed until the court conducts its fairness hearing, a full fairness analysis is unnecessary at [the preliminary approval] stage[.]" 2006 U.S. Dist. LEXIS 42074, at *29 (internal quotations omitted). Thus, when determining whether to grant preliminary approval, the Court should "simply conduct a cursory review of the terms of the

---

[5] Although the Settlement Agreement contemplates an incentive award for the Representative Plaintiff, the amount of any award is within the Court's discretion and, thus, will not be unreasonable in light her role in this case. Indeed, "[s]ince without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent nonlegal but essential case-specific expenses." *Misra v. Decision One Mortg. Co.,* 2009 U.S. Dist. LEXIS 119468, at *21-22 (C.D. Cal. Apr. 13, 2009); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) ("A class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action.").

*Bruno v. Quten Research Institute, LLC et al.,* Case No. 8:11-cv-00173 DOC (Ex)
UNOPPOSED *EX PARTE* MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

[P]arties' settlement for the purpose of resolving any glaring deficiencies before ordering the [P]arties to send the proposal to class members." *Id.*

While the Court need not, at the preliminary approval stage, review the Settlement Agreement to determine whether it is fair and adequate for the purposes of final approval, a review of the final approval factors demonstrates that the Settlement Agreement falls well within the range of possible approval sufficient to obtain preliminary approval.

### i.      The Strength of Plaintiff's Case

It can be difficult to ascertain with precision the likelihood of success at trial. The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, and to the extent courts assess this factor, it is to determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case.

*Misra*, 2009 U.S. Dist.  LEXIS 119468, at *19 (internal quotations marks and citation omitted). In this case, Plaintiff is confident in the strength of her claims and believes that she could meet her burdens at trial. Nevertheless, Plaintiff recognizes that Defendants have raised several factual and legal defenses that, if successful, could defeat or substantially impair the value of the Class's claims. Moreover, the parties repeatedly contested the admissibility of key evidence, including the report and testimony of Plaintiff's expert, the report of the National Advertising Division's review of Qunol's advertising, and documents supporting Plaintiff's damages calculation. Moreover, even if found liable at trial, Defendants assert that full restitution of the purchase price is improper because even if the product was misleadingly labeled, Class Members still received a value that should equitably offset restitution.

Case law guides parties to honestly consider the risk of litigation, rather than airily presuming that litigation poses no risk whatsoever. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). This is exactly what the parties have done in reaching the Settlement Agreement.

10

In sum, given the defenses and evidentiary objections asserted by Defendants in this action, there is real risk of an unfavorable outcome to Plaintiff and the Class if the case proceeds through trial. "The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation." *In re Nvidia Derivs. Litig.*, 2009 U.S. Dist. LEXIS 24973, at *17 (N.D. Cal. Mar. 18, 2009).

### ii.      *Complexity, Expense, and Probable Length of the Class Litigation*

Plaintiff's claims involve complex legal issues, and the costs and risks associated with continuing to litigate this action by going through trial would require substantial resources and Court time. Even though, if the Settlement was not approved, trial would occur quickly, appeals would inevitably follow. "[A]voiding a trial and inevitable appeals in this complex . . . suit strongly weigh in support of approval of the Settlement, rather than prolonged and uncertain litigation." *Rodriguez v. West Publ. Corp.*, 2007 U.S. Dist. LEXIS 74849, at *40 (C.D. Cal. Aug. 10, 2007). Thus, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### iii.      *Range of Recovery*

To assess the reasonableness of a proposed settlement seeking monetary relief, the "inquiry into fairness should contrast settlement rewards with likely rewards if case goes to trial" and consider that "costs of further litigation and risks of proof difficulties militate in favor of settlement approval." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 240 (5th Cir. 1982). *See also City of Detroit v. Ginnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the proposed recovery does not, in and of itself, mean the settlement is grossly inadequate and should be disapproved.").

The Settlement Agreement provides monetary relief for the Class without the need for trial and achieves what Plaintiff sought for the Class: unlimited partial refunds

for Class Members who make a claim with proof of purchase, and partial refunds of up to $10.65 total for each Class Member who makes a claim without proof of purchase. Moreover, there is no cap on the number of claims Defendants will pay out. Thus, unlike some class action settlements with a limited fund, there is no possibility that Class Members' recoveries will be reduced pro rata depending on the number of claims.

A district court should not reject a settlement solely because it does not provide complete victory to the Class. *Hanlon*, 150 F.3d at 1027

("Of course it is possible . . . that a settlement could have been better. But this possibility does not mean that [the] settlement presented [is] not fair, reasonable or adequate. . . . The question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

"[C]ourts [have also] recognized that even where 'the total settlement fund is small,' in comparison to the possible recovery available after trial, the settlement may not be 'unreasonable in light of the perils plaintiff[] face[s]' in continuing to litigate [her] case." *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086,1098 (C.D. Cal. 2011) (citation omitted). "Indeed, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Id.* (internal citations and quotations omitted) *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)

Further, the Settlement's injunctive relief will address the alleged harm caused to consumers who might not otherwise be reached by the Settlement: Defendants' agreement to refrain from labeling Qunol with the challenged "6x" claims unless they are sufficiently substantiated by *new* empirical evidence, which, for purposes of the settlement, concedes Plaintiff's allegations that the existing studies do not substantiate Defendants' "6x" marketing. *See Riker v. Gibbons*, 2010 U.S. Dist. LEXIS 120841, at *12 (D. Nev. Oct. 27, 2010) (approving settlement for injunctive and declaratory relief that "achieve[d] the goals of the lawsuit"); *McAlarnen v. Swift Transp. Co.*, 2010 U.S.

Dist. LEXIS 7877 (E.D. Pa. Jan. 29, 2010) (approving settlement for injunctive and declaratory relief because risk of establishing liability and damages weighed in favor of settlement).

### iv.    The Extent of Discovery Completed and the Stage of the Proceedings

This case settled well after the Class was certified, nearly on the eve of trial. Fact and expert discovery was complete, Defendants' summary judgment motion was fully briefed, and the parties understand what evidence each would offer at trial in support of their case. This allowed a clear view of the strengths and weaknesses of each party's case. In sum, the parties were in a position to make an informed decision regarding the reasonableness of the Settlement Agreement.

### v.    The Experience and Views of Counsel

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiff['s] counsel should be given a presumption of reasonableness." *Knight*, 2009 U.S. Dist. LEXIS 11149, at *11 (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *see also DIRECTV*, 221 F.R.D. at 528 (noting that "great weight" should be give given to the recommendations of counsel); *In re Employee Benefit Plans Secs. Litig.*, 1993 U.S. Dist. LEXIS 21226, at *17 (D. Minn. June 2, 1993) ("The court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement."). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pacific Enters.*, 47 F.3 at 378. Thus, "the Court should not without good cause substitute its judgment for" counsel's. *Boyd*, 485 F. Supp. at 622. *See also DIRECTV*, 221 F.R.D. at 528 ("the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its judgment for that of counsel" (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977))).

Here, "[i]n addition to being familiar with the present dispute, Plaintiff's counsel has considerable expertise in . . . consumer and class action litigation." *See Knight*, 2009 U.S. Dist. LEXIS 11149, at *11. There "is nothing to counter the presumption that

13

*Bruno v. Quten Research Institute, LLC et al.*, Case No. 8:11-cv-00173 DOC (Ex)
UNOPPOSED *EX PARTE* MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  counsel's recommendation is reasonable." *Id.* Therefore, this factor weighs in favor of

2  preliminarily approving the Settlement Agreement.

3        ***vi.***        ***The Reaction of Class Members to the Proposed Settlement***

4        At the preliminary approval stage, the reaction of class members to the proposed

5  settlement is not known because notice has not yet been disseminated. Thus, at this stage

6  this factor does not apply. Consideration of the factor is reserved for the fairness hearing,

7  where class members will have a chance to speak in favor or object to settlement.

8  **III.  THE PROPOSED NOTICE PLAN SATISFIES RULE 23 AND DUE**

9            **PROCESS**

10        Rule 23 requires that notice of a class action settlement be "the best notice

11  practicable under the circumstances . . . ." Fed. R. Civ. P. 23(c)(2)(B). *See also*

12  Newberg on Class Actions, § 8.2 at 162-65. The notice must contain "information

13  that a reasonable person would consider to be material in making an informed,

14  intelligent decision of whether to opt out or remain a member of the class and be bound

15  by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105

16  (5th Cir. 1977). *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974);

17  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

18        If the court's *prima facie* review of the relief offered and notice provided by the

19  settlement finds they are fair and adequate, it should order that notice be sent to the

20  Class. Manual for Complex Litigation, § 21.632 at 321. While notice must be

21  adequate, the mechanics are left to the court's discretion, subject only to the broad

22  "reasonableness" standard imposed by Due Process. In the Ninth Circuit, a notice of

23  settlement satisfies Due Process if it "generally describes the terms of the settlement in

24  sufficient detail to alert those with adverse viewpoints to investigate and to come

25  forward and be heard." *Churchill Village*, 361 F.3d at 575 (citing *Mendoza v. Tucson

26  Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025.

27        The proposed Class Notice and Notice Plan here are adequate and reasonable.

28  The Class Notice is written in clear language, giving consumers: (1) basic information

about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can obtain settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the settlement; (5) an explanation that any claims against Defendants that could have been litigated in this action will be released if the Class Member does not opt out; (6) the names of counsel for the Class and information regarding attorneys' fees; (7) the fairness hearing date, along with an explanation of eligibility for appearing at the fairness hearing; and (8) the settlement web site, where Class Members can obtain more information. (*See* Settlement Agreement Ex. 2.)

## IV.    THE PROPOSED TIMELINE SHOULD BE ADOPTED

The parties propose the following  timeline of events relating to the Settlement's ultimate approval, based on preliminary approval:

| Event | Date |
| --- | --- |
| Class Notice Disseminated | Within three weeks of Order Granting Preliminary Approval |
| Motion for Final Approval due | December 11, 2012 |
| Motion for Fees, Costs, and Incentive Awards due | December 11, 2012 |
| Last Day to Postmark Written Opt Out or Objection or Written Notice of Intent to Appear  at Fairness Hearing | December 21, 2012 |
| Response to Objections due | January 14, 2013 |
| Final Approval Hearing | January 21, 2013 |
| Last Day to Submit Claim Form | February 5, 2013 |

## V.    THE COURT SHOULD RE-STYLE THE ACTION

Finally Plaintiff respectfully requests the Court re-caption the action *In re Qunol CoQ10 Liquid Labeling Litigation*. This case name will be more informative to class members than the current name and spare Ms. Bruno and her family the unwanted publicity from having her name attached to the extensive settlement notice campaign.

15

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests the Court issue an Order: (1) granting preliminary approval of the Class Action Settlement Agreement; (2) approving the Notice Plan; (3) setting the final approval hearing and schedule; and (4) re-styling this action *In re Qunol CoQ10 Labeling Litigation*.

DATED: October 15, 2012                    Respectfully submitted,

                                           /s/ Gregory S. Weston

                                           **THE WESTON FIRM**
                                           GREGORY S. WESTON
                                           JACK FITZGERALD
                                           MELANIE PERSINGER
                                           COURTLAND CREEKMORE
                                           1405 Morena Blvd., Suite 201
                                           San Diego, CA 92110
                                           Telephone:  (619) 798-2006
                                           Facsimile:   (480) 247-4553

                                           **LAW OFFICES OF RONALD A. MARRON, APLC**
                                           RONALD A. MARRON
                                           B. SKYE RESENDES
                                           3636 4th Avenue, Suite 202
                                           San Diego, CA 92109
                                           Telephone:  (619) 696-9006
                                           Facsimile:   (619) 564-6665

                                           **<u>Class Counsel</u>**

*Bruno v. Quten Research Institute, LLC et al.*, Case No. 8:11-cv-00173 DOC (Ex)
UNOPPOSED *EX PARTE* MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT